# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DEAD RIVER COMPANY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No.** _____ |
| ) | |
| KENNETH BOYINGTON, ) | |
| ) | |
| and ) | |
| ) | |
| NARISSA GOODWIN, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT (INJUNCTIVE RELIEF SOUGHT)

NOW COMES Plaintiff, Dead River Company, LLC ("Dead River" or "Plaintiff"), by and through its undersigned counsel, and hereby complains as follows against Defendants Kenneth Boyington ("Boyington") and Narissa Goodwin ("Goodwin" and together with Boyington, "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1.   Plaintiff Dead River is a Delaware limited liability company with its principal place of business in South Portland, Maine.

2.   On information and belief, Defendant Kenneth Boyington is a resident of the State of Maine.

3.   On information and belief, Defendant Narissa Goodwin is a resident of the State of Maine.

4. This Court has jurisdiction over Dead River's federal claims pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Dead River's state-law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2).

## FACTUAL ALLEGATIONS

6. Dead River is in the business of selling and delivering heating fuel and propane throughout New England, including Maine, New Hampshire, Vermont, and western Massachusetts.

7. In 2018, Dead River acquired substantially all of the assets of Coastway Transportation, Inc. d/b/a Crowley Energy ("Crowley Energy"), a fuel oil and propane business. Crowley Energy was owned by Richard and Emily Crowley. In connection with that acquisition, Dead River also acquired from Richard and Emily Crowley certain real and other property used in the business. Dead River continues to operate the business under the name "Crowley Energy."

8. In connection with the transaction described above, each of Richard and Emily Crowley executed and delivered to Dead River a Consulting, Non-Competition, and Confidentiality Agreement. Pursuant to those agreements, each of Richard and Emily Crowley agreed not to compete with Dead River in Maine or New Hampshire for a period of six years commencing on August 29, 2018.

9. Upon information and belief, Boyington is the son of Emily Crowley and the stepson of Richard Crowley.

10. Upon information and belief, Goodwin is Boyington's sister and is the daughter of Emily Crowley and the stepdaughter of Richard Crowley.

11. At the time of Dead River's acquisition of Crowley Energy's assets, Boyington and Goodwin were employed by Crowley Energy. Upon the closing of the transaction, Boyington accepted employment from Dead River as the General Manager of the operations purchased from the Crowleys and operated by Dead River as "Crowley Energy." Dead River classifies Crowley Energy as a "Market." Goodwin accepted employment from Dead River as well and worked as the Office Manager in the Crowley Energy Market.

12. In October 2021, Dead River purchased the assets of the business known as Main Street Fuel, located in Richmond, Maine. Shortly following that purchase, Boyington accepted the position of General Manager of Dead River's new Main Street Fuel Market, and Goodwin accepted the position of General Manager of Dead River's Crowley Energy Market. The new roles were announced on or about November 12, 2021.

13. As General Managers, Boyington and Goodwin had considerable discretion and authority within Dead River. General Managers run the Market as a semi-autonomous cost center. They are expected to develop relationships with retail and commercial customers and prospects and to grow the business for Dead River. They also make decisions on pricing product. They also control the use of resources in the Market.

14. As General Managers, Boyington and Goodwin had access to certain confidential trade-secret information of Dead River, including but not limited to information concerning: Dead River's suppliers and pricing; Dead River's customers and prospects (including not only names and contact information, but also pricing and usage information particular to each

customer); Dead River's marketing strategy and practices; and Dead River's business plans and certain other financial information concerning Dead River.

15. This trade-secret information derives independent value from that fact that Dead River's customer list (coupled with customer-specific pricing and usage information), supplier and pricing information, and other similar information is not generally known or generally ascertainable through public information, and would enable someone in possession of that information to compete with Dead River on footing unequal to Dead River's other competitors, who do not have knowledge of this trade-secret information.

16. Dead River takes reasonable measures to protect its trade-secret information. For example, Dead River controls access to sensitive information to those who need to know, employs information-security practices to ensure that information is stored in encrypted or otherwise safe media and is accessed only by authorized personnel. Dead River also has policies to protect the information including a Business Code of Conduct and Information Security Policy covering certain aspects of the business.

17. Shortly before taking positions as General Managers at Crowley Energy and Main Street Fuel, respectively, Boyington and Goodwin caused to be formed Coastline Energy, LLC ("Coastline"). The Certificate of Formation for Coastline was executed by James E. Smith, Esq. on October 27, 2021 and received by the Maine Secretary of State's office on October 28, 2021.

18. Boyington is an owner of Coastline.

19. Goodwin is an owner of Coastline.

20. In late 2021 and early 2022, Boyington, using his position as General Manager at Dead River, caused Dead River to order a volume of propane tanks that was notable for the lack of corresponding tank sets at customer locations. Dead River's preferred business practice is to

retain ownership of tanks set at customer locations to facilitate propane purchases from Dead River.

21. In approximately January 2022, Boyington caused Dead River to sell a propane tank to each of two separate customers. These sales were conspicuous because the tanks were sold directly to the customers at favorable prices, and because Dead River's preferred practice is to retain ownership of the tanks, to discourage customers from switching propane suppliers. Boyington permitted the purchasers of the new propane tanks to acquire the tanks without being charged Dead River's customary amounts for labor and installation.

22. Boyington did not cause these purchasers of propane tanks to become customers of Dead River. Rather, nearly immediately after Boyington terminated his employment with Dead River, Boyington provided fuel to those tanks using his new company, Coastline.

23. On approximately January 14, 2022, Boyington gave notice that he would be leaving his employment with Dead River in two weeks. On approximately January 19, 2022, Goodwin gave notice that she would be leaving their employment with Dead River. Neither Boyington nor Goodwin provided an explanation to their manager for why they were leaving or what their future plans were, even when their manager specifically asked. Boyington's manager attempted to persuade Boyington to remain with Dead River. As of Friday, January 21, 2022, Boyington made statements to his manager that led his manager to believe that Boyington might reverse his decision and remain at Dead River.

24. The next day, on Saturday, January 22, 2022, Boyington, then still an employee of Dead River, drove a new fuel oil delivery truck with the name "Coastline Energy" into Dead River's bulk storage plant in Brunswick, Maine. A Dead River employee happened to see Boyington and his new truck at the bulk storage plant and reported the incident to Dead River

management. This was the first time Dead River management learned that Boyington and Goodwin intended to leave in order to compete with Dead River.

25. Boyington had no legitimate reason to be at Dead River's bulk storage plant on January 22, 2022, with a delivery truck owned by Coastline.

26. On information and belief, Boyington and Goodwin formed Coastline to compete with Dead River.

27. Coastline does, in fact, compete with Dead River, including in both the Crowley Energy Market and the Main Street Fuel Market.

28. Boyington and Goodwin own and control Coastline.

29. On Tuesday January 25, 2022, Dead River met with Boyington and Goodwin and informed them that their employment was terminating immediately.

30. During their employment with Dead River, Boyington and Goodwin each had use of a cellular telephone (the "Phones") that was paid for, owned by, and under a Verizon Wireless plan paid for by Dead River. At the time Dead River purchased the assets of Crowley Energy from Goodwin and Boyington's parents, the Phones were used in the business and were on the Crowley corporate account assumed by Dead River during the purchase. Dead River therefore became the Verizon customer and obligor under the cell phone plan that included the Phones as of the closing and Dead River has since paid the charges on that cell phone plan. Upon information and belief, at the time of Dead River's acquisition of Crowley Energy's assets, the telephone numbers assigned to the Phones were associated with a wireless plan of Crowley Energy. Crowley Energy assigned all rights in that wireless plan to Dead River in connection with Dead River's acquisition of Crowley Energy's assets. Moreover, Crowley Energy assigned to Dead River all of its telephone numbers.

31.     Boyington and Goodwin used the Phones (and the phone numbers associated with the Phones) in the conduct of Dead River's business, including the use of text messaging, Internet access, emailing, and calling.  Dead River furnished the Phones, and their associated numbers, to Boyington and Goodwin primarily for business use, while permitting limited, occasional, or incidental use of them for non-business purposes per Dead River company policy.  The Phones contained, and allowed Boyington and Goodwin to access, Dead River proprietary, confidential, and trade secret information, including without limitation, customer contact information, email communications with customers, pricing information, and usage information.  The phone numbers associated with the Phones are important business assets of Dead River because Dead River's current and potential customers know to call those phone numbers in order to conduct business with Dead River.

32.     Upon informing Boyington and Goodwin that they were terminated, Dead River personnel demanded that Boyington and Goodwin return the Phones to Dead River.  Boyington and Goodwin initially refused to do so.  On January 26, 2022, counsel for Dead River sent both Boyington and Goodwin a litigation hold notice, requesting among other things that they return electronic information belonging to Dead River, refrain from deleting information on the Phones before returning them, and preserve any and all materials in their possession, custody, or control (specifically including electronically stored information like email and text messages) concerning Coastline or efforts to compete with Dead River.

33.     On February 2, 2022, Boyington and Goodwin returned the physical Phones to Dead River.  The Phones, however, were wiped of all information (e.g., call history, text messages, emails, contacts, and voicemails).  Furthermore, Boyington and Goodwin refused to return to Dead River the phone numbers associated with the Phones (which, as described above,

belonged and still belong to Dead River as a result of Dead River's acquisition of Crowley Energy's assets).

34. On information and belief, Boyington and/or Goodwin communicated with and persuaded Verizon Wireless to transfer the numbers associated with the Phones out of the Dead River account and into individual accounts controlled by Boyington and/or Goodwin.

35. Dead River, through counsel, has demanded that Boyington and Goodwin take whatever steps are necessary to reverse the transfer of the Phone numbers from Dead River's account to their personal accounts. Boyington and Goodwin have not done so. Dead River has also demanded that Boyington and Goodwin turn over all information contained on the Phones. Boyington and Goodwin have not done so. Boyington and Goodwin have failed and/or refused to turn over the phone numbers associated with the Phones and the Dead River information contained on the Phones. Boyington and Goodwin continue to use those phone numbers and any data transferred from the Phones in their current business competing with Dead River.

36. On information and belief, Boyington and Goodwin deleted information off of the Phones (such as call history, contacts, text messages, voicemails, and emails) before returning the Phones to Dead River in order to hide actions taken to establish Coastline while they remained employees of Dead River and to transfer Dead River's proprietary information to their new cell phone accounts for use in their new business, including but not limited to efforts to use Dead River's trade-secret information for their/Coastline's benefit, efforts to solicit Dead River customers to Coastline, and efforts to lure away Dead River employees to Coastline.

37. On information and belief, Boyington and/or Goodwin, while still employed by Dead River, used Dead River property, including but not limited to the Phones (and the phone numbers associated with the Phones), the Dead River email accounts, and Dead River's trade-

secret information, to help them establish Coastline and with an aim to competing with Dead River.

38. Neither Boyington nor Goodwin had Dead River's permission to use the Phones (or the phone numbers associated with the Phones), the Dead River information on or accessible via the Phones, or any other Dead River property in such a way as described above.

## COUNT I: BREACH OF DUTY OF LOYALTY

39. Dead River hereby repeats and realleges Paragraphs 1 through 38 as if set forth fully herein.

40. Boyington and Goodwin, as employees of Dead River, were Dead River's agents, and as such owed to Dead River a duty of loyalty.

41. On information and belief, as described above, Boyington and Goodwin breached their duty of loyalty as agents by taking the following actions (among others) while still employed by Dead River: undercharging customers for tanks sold; discouraging buyers of new tanks from becoming Dead River customers; soliciting customers or potential customers away from Dead River; soliciting one or more employees away from Dead River; using Dead River's trade secret information for their own/Coastline's benefit (including but not limited to Dead River customer data, usage data, and pricing data); and using Dead River's property (including but not limited to the Phones, the phone numbers associated with the Phones, and the Dead River information on or accessible through the Phones) without permission to further the establishment and operation of Coastline, a Dead River competitor.

42. The conduct, acts, and omissions described above injured Dead River and benefited Boyington, Goodwin, and/or Coastline.

43. Dead River's damages as a result of Boyington and Goodwin's breaches of the duty of loyalty are substantial and ongoing.

## COUNT II: DEFEND TRADE SECRETS ACT OF 2016 ("DTSA"), 18 U.S.C. § 1836, et seq.

44. Dead River hereby repeats and realleges Paragraphs 1 through 43 as if set forth fully herein.

45. The Defend Trade Secrets Act prohibits misappropriation of Dead River's trade secret information.

46. Dead River's trade-secret information, as described above, was accessible to Boyington and Goodwin by virtue of their positions as General Managers, including as contained on or accessed via the Phones.

47. Dead River's trade-secret information relates to a product or service used or intended for use in interstate commerce since, for example, Dead River sells and delivers heating fuel and propane to customers throughout New England, including Maine, New Hampshire, Vermont, and western Massachusetts.

48. As described above, Boyington and Goodwin misappropriated Dead River's trade-secret information, including but not limited to their: use of the trade-secret information while Dead River employees without Dead River's permission to help establish and operate Coastline and continued accessing of Dead River's trade-secret information on and through the Phones without Dead River's permission after Dead River terminated their employment and before the Phones were finally returned to Dead River.

49. On information and belief, Boyington and Goodwin knew that they had used improper means to obtain and retain Dead River's trade-secret information. For example, and

Boyington and Goodwin wiped all information off the Phones (including emails, text messages, call history, contacts, and voicemails) before returning the Phones to Dead River.

50. Dead River has reason to believe that Boyington and Goodwin intended or intend to use the trade secrets for their own personal economic benefit (including through Coastline).

51. As set forth above, information now possessed by Boyington and Goodwin is of independent economic value because it is not generally known to or ascertainable by others by proper means, and Dead River has taken reasonable measures to maintain the secrecy of this information.

52. Because of Boyington/Goodwin's acts, Dead River has sustained ascertainable loss, and will continue to suffer ascertainable loss, including, but not limited to, monetary damages and loss of profits.

53. As a result of Boyington/Goodwin's misappropriation of Dead River's trade secrets, Defendants have and continue to violate the DTSA.

54. Pursuant to the DTSA, section 1836(b)(3), Dead River is entitled to injunctive relief and an award of damages.

55. Unless injunctive relief is granted, Boyington and Goodwin may continue to misappropriate and/or benefit from misappropriation of Dead River's trade secrets and will continue to cause irreparable injury to Dead River.

### COUNT III: MAINE UNIFORM TRADE SECRETS ACT ("MUTSA"), 10 M.R.S. §§ 1541 to 1548

56. Dead River hereby repeats and realleges Paragraphs 1 through 55 as if set forth fully herein.

57. The Maine Uniform Trade Secrets Act prohibits the actual or threatened misappropriation of trade secrets.

58. Dead River's trade-secret information, as described above, was accessible to Boyington and Goodwin by virtue of their positions as General Managers, including as contained on or accessed via the Phones.

59. As described above, Boyington and Goodwin misappropriated Dead River's trade-secret information, including but not limited to their: use of the trade-secret information while Dead River employees without Dead River's permission to help establish and operate Coastline and continued accessing of Dead River's trade-secret information on and through the Phones without Dead River's permission after Dead River terminated their employment and before the Phones were finally returned to Dead River.

60. On information and belief, Boyington and Goodwin knew that they had used improper means to obtain and retain Dead River's trade-secret information. For example, Boyington and Goodwin wiped all information off the Phones (including emails, text messages, call history, contacts, and voicemails) before returning the Phones to Dead River.

61. Dead River has reason to believe that Boyington and Goodwin intended or intend to use the trade secrets for their own personal economic benefit (including through Coastline).

62. As set forth above, information now possessed by Boyington and Goodwin is of independent economic value because it is not generally known to or ascertainable by others by proper means, and Dead River has taken reasonable measures to maintain the secrecy of this information.

63. Because of Boyington's and Goodwin's acts, Dead River has sustained ascertainable loss, and will continue to suffer ascertainable loss, including, but not limited to, monetary damages and loss of profits.

64. Pursuant to the Maine Uniform Trade Secrets Act, Dead River is entitled to injunctive relief for actual or threatened misappropriation of trade secrets.

65. Unless injunctive relief is granted, Boyington and Goodwin may continue to misappropriate and/or benefit from misappropriation of Dead River's trade secrets and will continue to cause irreparable injury to Dead River.

## COUNT IV: CONVERSION

66. Dead River hereby repeats and realleges Paragraphs 1 through 65 as if set forth fully herein.

67. As described above, the Phones, the phone numbers associated with the Phones, and the information on the Phones, was and is the property of Dead River.

68. Dead River had the right to possession of the Phones, the phone numbers associated with the Phones, and the information on the Phones at the time Dead River terminated the employment of Boyington and Goodwin, and continues to have the right to possession of the Phones, the phone numbers associated with the Phones, and the information on the Phones.

69. Boyington and Goodwin wrongfully retained the Phones, the phone numbers associated with the Phones, and the information on the Phones after Dead River terminated their employment.

70. Dead River has demanded that Boyington and Goodwin return the Phones, the phone numbers associated with the Phones, and the information on the Phones. Boyington and

Goodwin have returned the physical Phones, but have not returned the phone numbers associated with the Phones or the information on the Phones.

WHEREFORE, Dead River respectfully requests that this Honorable Court: (1) enter judgment in its favor; (2) award damages sufficiently large to compensate for damages Dead River has suffered as a result of Boyington's and Goodwin's conduct, including but not limited to, damages for general and non-economic damages, economic damages, pre-judgment and post-judgment interest, and punitive damages, and costs of this suit, including reasonable attorney fees and costs; (3) require Boyington and Goodwin to return to Dead River the phone numbers associated with the Phones, the information on the Phones, any and all confidential, proprietary, and/or trade-secret information of Dead River, and require Byington and Goodwin to destroy any copies of such information; (4) enjoin Boyington and Goodwin's actual and/or threatened misappropriation of Dead River's trade-secret information; and (5) grant such further relief the Court may deem proper.

Dated at Portland, Maine this 17th day of February, 2022.

        DEAD RIVER COMPANY, LLC

        By its attorneys,

        */s/ Robert C. Brooks*
        Martha C. Gaythwaite, Esq., Bar No. 2811
        Robert C. Brooks, Esq., Bar No. 7387
        VERRILL DANA LLP
        One Portland Square
        Portland, ME  04101
        Ph:  (207) 774-4000
        Fx:  (207) 774-7499
        mgaythwaite@verrill-law.com
        rbrooks@verrill-law.com
        Attorneys for Plaintiff Dead River Company, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on February 17, 2022, I electronically filed this Complaint by electronic mail addressed to the following:

newcases.portland@med.uscourts.gov

with service to:

James Smith, Esq.
48 Pleasant Street
Brunswick, ME 04011


Dated:  February 17, 2022

                                                      /s/ Robert C. Brooks
                                         Robert C. Brooks, Esq., Bar No. 7387
                                         VERRILL DANA LLP
                                         One Portland Square
                                         Portland, ME  04101
                                         Ph:  (207) 774-4000
                                         Fx:  (207) 774-7499
                                         rbrooks@verrill-law.com
                                         Attorney for Plaintiff